UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAY V. YUNIK               :     CIVIL NO. **3:05-CV-0619**
                                :
          Petitioner    :     (Judge Conaboy)
                                :
          v.              :     (Magistrate Judge Smyser)
                                :
THE ATTORNEY GENERAL OF THE   :
COMMONWEALTH OF PENNSYLVANIA,  :
                                :
          Respondent    :

## <u>REPORT AND RECOMMENDATION</u>

I. Background and Procedural History.

On March 28, 2005, the petitioner, a state inmate proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

The petitioner in not challenging his conviction. Rather, the petitioner is challenging the decision of the Pennsylvania Board of Probation and Parole (the Board) to deny him parole. The petitioner claims that in denying him parole the Board denied him due process and equal protection of the laws. The petitioner also claims that the Board violated the Fifth Amendment, the First Amendment, the Eighth Amendment and breached his plea agreement.

By an order dated April 7, 2005, the respondent was ordered to respond to the petition on or before April 27, 2005. The respondent subsequently requested and received an

extension of time until May 27, 2005 to respond to the petition.

On May 5, 2005, the petitioner filed a motion to stay this case so that he may present his claims to the Pennsylvania courts.

On May 24, 2005, the respondents file an answer to the petition and a response to the petitioner's motion for a stay.

II.  Motion to Stay.

The petitioner is seeking a stay of the instant case so that he can present his claims to the state courts.  The respondent contends that the petition in the instant case should be dismissed without prejudice because the petitioner has not exhausted state remedies.  However, the respondent also states that he has no opposition to the court granting the motion for a stay pending the petitioner's presentation of his claims to the Pennsylvania courts if the court finds such a stay more appropriate than a dismissal without prejudice. The respondent also contends that the court should deny the petition on the merits.

The court has discretion to stay a petition containing both exhausted and unexhausted claims to allow the petitioner to present his unexhausted claims to the state court in the first instance and then to return to federal court for review

of his perfected petition. *Rhines v. Weber,* 125 S.Ct. 1528
(2005).  However, the court should stay a mixed habeas
petition only in limited circumstances. *Id.* at 1535. "Because
granting a stay effectively excuses a petitioner's failure to
present his claims first to the state courts, stay and
abeyance is only appropriate when the district court
determines there was good cause for the petitioner's failure
to exhaust his claims first in state court." *Id.*

        We conclude that it would not be appropriate to stay
the instant petition.  First, the petition in the instant case
is not a mixed petition.  The petitioner has not presented any
of his claims to the state courts.  Moreover, as discussed
below, it is not clear if any state remedies remain available
to the petitioner to present his claims to the state courts.
Accordingly, it will be recommended that the petitioner's
motion for a stay be denied.

III.  Exhaustion.

        The respondent argues that the petition should be
dismissed without prejudice because the petitioner has not
exhausted state remedies.

        A state prisoner must exhaust available state remedies
before filing a petition for habeas corpus in federal court.
28 U.S.C. § 2254(b) and (c).  This requirement serves the
interests of comity between the federal and state systems by

allowing the state an initial opportunity to determine and correct any violations of a prisoner's federal rights. *O'Sullivan v. Boerckel*, 119 S.Ct. 1728, 1732 (1999)( "Comity . . . dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief.").

A habeas corpus petitioner bears the burden of demonstrating that he has exhausted state remedies. *O'Halloran v Ryan*, 835 F.2d 506, 508 (3d Cir. 1987).  In order to exhaust state remedies for federal habeas corpus purposes, a petitioner must show that he has fairly presented his claim to the state courts.  *Picard v. Connor*, 404 U.S. 270, 278 (1971). To have been fairly presented to the state courts, both the legal theory and the facts supporting the claim must have been presented to the state courts.  *O'Halloran*, *supra,* 835 F.2d at 508.  Further, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan, supra,* 119 S.Ct. at 1732.

It is not clear that there is a method for the petitioner to raise his constitutional challenges to the denial of parole in the Pennsylvania courts.

In *Reider v. Pennsylvania Bd. of Probation & Parole*, 514 A.2d 967, 971 (Pa. Commw. Ct. 1986), the Commonwealth Court of Pennsylvania held that under Pennsylvania law a prisoner has no constitutionally protected liberty interest in parole and that, therefore, a denial of parole may not be judicially reviewed in Pennsylvania. After *Reider,* other panels of the Commonwealth Court followed its holding. *See e.g. Shaw v. Pennsylvania Bd. of Probation & Parole*, 671 A.2d 290, 292 (Pa. Commw. Ct. 1996)(due process and equal protection claims in connection with denial of parole unreviewable); *King v. Pennsylvania Bd. of Probation & Parole*, 534 A.2d 150, 151 (Pa. Commw. Ct. 1987)(retaliatory denial of parole not reviewable). Other panels, however, seemed to retreat somewhat from *Reider's* holding. *See e.g. Murgerson v. Pennsylvania Bd. of Probation & Parole*, 579 A.2d 1335, 1336 n.2 (Pa. Commw. Ct. 1990)(commenting that imposition of parole condition not subject to judicial review absent an allegation that the condition violates a prisoner's constitutional rights); *McCaskill v. Pennsylvania Bd. of Probation & Parole*, 631 A.2d 1092, 1094 n.2 (Pa. Commw. Ct. 1993)(stating that judicial review of Parole Board's order includes determination of whether constitutional rights were violated).

In *Burkett v. Love*, 89 F.3d 135 (3d Cir. 1996), the United States Court of Appeals for the Third Circuit predicted that the Pennsylvania Supreme Court would hold that the Commonwealth Court of Pennsylvania has jurisdiction over appeals from denials of parole based on constitutional

5

grounds.  The *Burkett* court also stated that even if the
Commonwealth Court does not have jurisdiction over direct
appeals, a prisoner may still file either a petition for a
writ of habeas corpus or a petition for a writ of mandamus in
the state courts.  Thus, according to *Burkett* a prisoner had
three potential ways of attacking a denial of parole in
Pennsylvania - appeal, mandamus, or habeas corpus. *Id*. at 142.
Although the *Burkett* court held that a prisoner in
Pennsylvania challenging the denial of parole on
constitutional grounds has state remedies available, it
recognized that Pennsylvania law was unsettled and stated that
"a ruling by the state Supreme Court or Commonwealth Court
discussing the scope of the *Reider* opinion and the proper
channels for bringing such claims would be helpful in this
frequently litigated area of state law." *Id. at 142.

     In *Weaver v. Pennsylvania Bd. of Probation and Parole*,
688 A.2d 766 (Pa. Commw. Ct. 1997), the Commonwealth Court of
Pennsylvania rejected the holding and reasoning of *Burkett*.
The *Weaver* court stated that the Commonwealth Court does not
have jurisdiction over appeals of denials of parole and that
state habeas corpus is also not available to challenge a
decision of the Board denying parole. 688 A.2d at 775. *But
see*, *Myers v. Ridge*, 712 A.2d 791, 794 (Pa. Commw. Ct.
1998)("decisions to grant or deny parole are generally not
appealable except to the extent that a constitutional or
statutory violation has occurred."). The *Weaver* court held
that a parole eligibility decision may be challenged by way of

6

a petition for a writ of mandamus, but that such a petition would only be granted where "the Board's refusal to grant parole, as evident solely in its decision, was, as a matter of law, based upon an erroneous conclusion that it had the discretion to deny parole for the reason given." *Id*. at 777.

In *Rogers v. Pennsylvania Bd. of Probation & Parole*, 724 A.2d 319 (Pa. 1999), prisoners claimed that the denial of parole by the Board was arbitrary and capricious.  The Pennsylvania Supreme Court held that "the courts of the Commonwealth do not have statutory jurisdiction to conduct appellate review of a decision of the Board, since such a decision does not constitute an adjudication." *Id.* at 322 The *Rogers* court did note, however, that while prisoners "are not entitled to appellate review of a Parole Board decision, they may be entitled to pursue allegations of constitutional violations against the Parole Board through a writ of mandamus, or through an action under 42 U.S.C. § 1983." *Id.* at 323 n.5.

On August 25, 1999, the United States Court of Appeals for the Third Circuit certified the following questions of law to the Pennsylvania Supreme Court: "1. May a person who has been denied parole from a Pennsylvania sentence obtain review from a Pennsylvania state court of a claim that the denial of parole violated the Ex Post Facto Clause of the United States Constitution?  2. If so, may review be secured on direct appeal, through a petition for a writ of mandamus, or in some

7

other manner?" *Coady v. Vaughn*, 98-1311, slip order (3d Cir.
Aug. 25, 1999).  By an Order dated December 17, 1999, the
Pennsylvania Supreme Court granted the Third Circuit's
Petition for Certification. *Coady v. Vaughn*, slip order (Pa.
Dec. 17, 1999).  On March 22, 2001, the Pennsylvania Supreme
Court answered the questions certified to it by the Third
Circuit. *Coady v. Vaughn*, 770 A.2d 287 (Pa. 2001).   The court
advised:

> [M]andamus will not lie where the
> substance of the board's discretionary action
> is the subject of the challenge.  Where,
> however, discretionary actions and criteria
> are not being contested but rather the actions
> of the board taken pursuant to changed
> statutory requirements are being challenged,
> an action for mandamus remains viable as a
> means for examining whether statutory
> requirements have been altered in a manner
> that violates the ex post facto clause.  Such
> an action could be brought in the original
> jurisdiction of the Commonwealth Court.
> Absent a change in the statutes governing
> parole, however, denial of parole would
> generally constitute a discretionary matter
> that is not subject to review.

*Id.* at 290 (footnote omitted).

The majority opinion of the Pennsylvania Supreme Court
in *Coady, supra*, did not address whether state habeas corpus
is available to a prisoner challenging the denial of his
parole on constitutional grounds.   However, Justice Castille,
in a concurring opinion, expressed his belief that "a
constitutional claim arising in connection with a prisoner's
continued confinement may be cognizable under Pennsylvania's
habeas corpus statute." *Id.* at 290.

In *Coady v. Vaughn*, 251 F.3d 480 (3d Cir. 2001), the United States Court of Appeals for the Third Circuit affirmed the order of the district court dismissing the petition in that case.  The court found that the petitioner in that case could have presented his ex post facto claim in a petition for a writ of mandamus to the Commonwealth Court. *Id.* at 489.  The Third Circuit also noted that it does not read the Pennsylvania Supreme Court's opinion in *Coady, supra*, as ruling out the possibility of relief under state habeas corpus laws. *Id.* at 490.

In *Winklespecht v. Pennsylvania Board of Probation and Parole*, 813 A.2d 688 (Pa. 2002), the Pennsylvania Supreme Court was again confronted with the question of whether a prisoner may challenge the denial of parole on constitutional grounds by way of a habeas corpus action.  The court refused to answer that question. *Id.* at 692 ("[W]e leave for another day the question of the propriety of habeas corpus as a remedy.").

After the Pennsylvania Supreme Court's opinion in *Coady* it is clear that a petition for a writ of mandamus is available to a prisoner challenging actions of the Parole Board taken pursuant to changed statutory requirements. However, the Pennsylvania Supreme Court has not clarified whether a state habeas corpus action is available to prisoners claiming that they were denied parole in violation of the Constitution.  Nor is it clear whether a petition for a writ

9

of mandamus is available to prisoners claiming they were
denied parole in violation of a constitutional provision other
than the *ex post facto* clause.

        In *DeFoy v. McCullough,* 393 F.3d 439, 444 (3d Cir.
2005), the Third Circuit reviewed the Pennsylvania cases and
concluded that *Weaver* is the best indication of how the
Pennsylvania Supreme Court would resolve the issue of the
remedies available in Pennsylvania to challenge on
constitutional grounds, other than pursuant to the *ex post
facto* clause, the denial of parole.   The court held that
"claims of constitutional violations in the denial of parole
in Pennsylvania need not be presented to the state courts via
a petition for a writ of mandamus in order to satisfy the
requirement of exhaustion." *Id.* at 445.   The court remanded
the case to the district court to address the merits of the
petition. *Id.*   The court in *DeFoy* did not specifically address
whether or not a state habeas petition is available to a
prisoner in Pennsylvania challenging a denial of parole on
constitutional grounds.  However, the court in *DeFoy* predicted
that the Pennsylvania Supreme Court would follow *Weaver,* and
the Commonwealth Court in *Weaver* stated that state habeas
corpus is not available to challenge a decision of the Board
denying parole.  Moreover, although not expressly holding that
a Pennsylvania prisoner challenging the denial of parole need
not file a petition for a writ of habeas corpus in state court
to satisfy the dictates of exhaustion, the court in *DeFoy*
remanded the case to the district court to address the merits

of the petition.  Accordingly, it appears that the court in *DeFoy* does not consider a state habeas petition to be an available remedy to a Pennsylvania prisoner challenging the denial of parole on constitutional grounds.

Based on *DeFoy*, we conclude that there are no state remedies available to the petitioner.  Accordingly, we reject the respondent's argument that the petition should be dismissed without prejudice based on a failure to exhaust state remedies.

IV.  Analysis of the Merits of the Petitioner's Claims.[1]

By a Notice of Board Decision dated December 3, 2004, the Board denied the petitioner parole. *Doc. 11, Exhibit 3.* The Notice issued by the Board provides:

> Following an interview with you and a review
> of your file, and having considered all
> matters required pursuant to the Parole Act of
> 1941, as amended, 61 P.S. § 331.1 ET SEQ., the

---

[1] The Supreme Court recently held in *Wilkinson v. Dotson,* 125 S.Ct. 1242 (2005), that two Ohio prisoners could bring claims challenging Ohio's parole procedures on constitutional grounds under 42 U.S.C. § 1983.  Although the Court held that the prisoners could bring their parole claims under § 1983, the court did not address the question whether such claims could also be brought under § 2254. The Third Circuit has analyzed parole claims under § 2254. *See Coady v. Vaughn,* 251 F.3d 480 (3d Cir. 2001); *Mickens-Thomas v. Vaughn,* 321 F.3d 374 (3d Cir. 2003). Since the Supreme Court has not expressly held that parole claims may not be brought under § 2254, we will follow the lead of the Third Circuit and analyze the petitioner's claims in this § 2254 case.

> Board of Probation and Parole, in the exercise
> of its discretion, has determined at this time
> that: Your best interests do not justify or
> require you being paroled/reparoled; and, the
> interests of the Commonwealth will be injured
> if you were paroled/reparoled.  Therefore, you
> are refused parole/reparole at this time.

*Id.*  The Notice listed the reasons for the decision as
including the petitioner's version of the nature and
circumstances of the offense committed, the petitioner's
refusal to accept responsibility for the offense committed,
the recommendation made by the Department of Corrections, and
the petitioner's need to participate in and complete
additional institutional programs. *Id.*  The Notice also
indicated that the petitioner will be reviewed again in or
after February of 2006 and that at the petitioner's next
parole review the Board will consider whether the petitioner
has participated in a treatment program for sex offenders,
whether the petitioner received a favorable recommendation for
parole from the Department of Corrections and whether the
petitioner maintained a clear conduct record and completed the
Department of Corrections prescriptive programs. *Id.*


A. Due Process.


The petitioner claims that the Board denied him due
process.


The Fourteenth Amendment due process clause provides
that no state shall "deprive any person of life, liberty, or
property, without due process of law."  A due process claim

12

requires a two part analysis.  First, the court must determine
whether the interest asserted by the plaintiff is within the
scope of protection of life, liberty, or property found in the
due process clause.  A protected liberty interest may arise
from two sources - the due process clause itself or the laws
of the States.  *See Hewitt v. Helms*, 459 U.S. 460, 466 (1983);
*Layton v. Beyer*, 953 F.2d 839, 842 (3d Cir. 1992).  Second, if
the interest is protected by the Fourteenth Amendment, the
court must determine what procedures constitute "due process
of law."  *Ingraham v. Wright*, 430 U.S. 651, 672 (1977).

A Pennsylvania prisoner does not have a liberty
interest protected by the due process clause in being released
on parole. *See Greenholtz v. Inmates of Nebraska Penal &
Correctional Complex*, 442 U.S. 1, 7 (1979)(the Constitution
creates no liberty interest in parole); *Weaver v. Pennsylvania
Bd. of Probation and Parole*, 688 A.2d 766, 770 (Pa. Commw. Ct.
1997)("Parole is nothing more than a possibility, and, when
granted, it is nothing more than a favor granted upon a
prisoner by the state as a matter of grace and mercy shown by
the Commonwealth to a convict who has demonstrated a
probability of his ability to function as a law abiding
citizen in society.")  The Board has broad discretion in
deciding when, or if, a prisoner should be released on parole.
*McGill v. Pennsylvania Dept. of Health, Office of Drug and
Alcohol Programs,* 758 A.2d 268, 271 (Pa. Commw. Ct. 2000).
However, the Board may not arbitrarily deny parole on the
basis of impermissible criteria such as race, religion or the

13

exercise of free speech rights, or on criteria with no rational relationship to the purpose of parole. *Block v. Potter*, 631 F.2d 233, 236-37 (3d Cir. 1980).

The petitioner contends that the Board denied him due process by acting arbitrarily and capriciously, by failing to inform him of the reasons for denying parole, and by relying on impermissible factors. However, it is clear that in the instant case the Board did inform the petitioner of the reasons for its decision and that the Board did not deny parole on the basis of impermissible criteria. The reasons set forth by the Board in its decision denying parole were the petitioner's version of the nature and circumstances of the offense committed, the petitioner's refusal to accept responsibility for the offense committed, the recommendation made by the Department of Corrections, and the petitioner's need to participate in and complete additional institutional programs. These are permissible criteria for the Board to consider and we can not say that the Board's decision was arbitrary or capricious. *See Coady v. Vaughn,* 251 F.3d 480, 487 (3d Cir. 2001)("[F]ederal courts are not authorized by the due process clause to second-guess parole boards and the requirements of substantive due process are met if there is some basis for the challenged decision.").

The petitioner also contends that the Board denied him due process by altering his sentence which was agreed upon and which was ordered by the sentencing judge. The petitioner

14

contends that his plea agreement dealt directly with "implied
release on parole after the completion of his minimum
sentence."  However, the petitioner has not presented a copy
of the plea agreement to support that assertion and the
transcript of the sentencing colloquy does not support that
assertion.  Moreover, the Board has the exclusive power to
determine when, or if, a prisoner whose maximum sentence is
two years or more is to be paroled. *See 61 P.S. § 331.17.*

The petitioner's due process claims are without merit.

B. Equal Protection.

The plaintiff claims that the Board denied him equal
protection.  He claims that sex offenders are required to
complete treatment programs in order to be paroled whereas
other prisoners, such as murderers, are not.

The equal protection clause "is not a command that all
persons be treated alike but, rather, 'a direction that all
persons similarly situated should be treated alike.'" *Artway
v. Attorney General*, 81 F.3d 1235, 1267 (3d Cir. 1996)(quoting
*City of Cleburn v. Cleburn Living Center*, 473 U.S. 432, 439
(1985)).  In order to establish a viable equal protection
claim  a plaintiff must show an intentional or purposeful
discrimination.  *Wilson v. Schillinger*, 761 F.2d 921, 929 (3d
Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986).

Sex offenders have higher recidivism rates than other offenders. *See McKune v. Lile,* 536 U.S. 24, 33 (2002)("When convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault.").  Thus, the Board has a rational basis to treat sex offenders differently that other prisoners with respect to the requirement for completing treatment programs.

The petitioner's equal protection claim is without merit.

C. Fifth Amendment.

The petitioner contends that the Board has a policy of not paroling sex offenders who have not completed a sex offender treatment program.  He further contends that to participate in the Department of Corrections' sex offender treatment program he would be required to admit his guilt while he still has appeals of his criminal conviction pending.  The petitioner claims that the Board has violated his Fifth Amendment right against self-incrimination by denying him parole on the basis that he has not completed the Department of Corrections' sex offender treatment program.

The Fifth Amendment provides, in pertinent part, that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. CONST. amend V.  "[T]he core

protection afforded by the Self-Incrimination Clause is a prohibition on compelling a criminal defendant to testify against himself at trial." *United States v. Patane*, 124 S.Ct. 2620, 2626 (2004).  The Fifth Amendment privilege against self-incrimination is aimed at governmental coercion. *Colorado v. Connelly*, 479 U.S. 157, 170 (1986)("The sole concern of the Fifth Amendment. . . is governmental coercion.").  The "coercion requirement comes directly from the constitutional language directing that no person "shall be *compelled* in any criminal case to be a witness against himself." *South Dakota v. Neville,* 459 U.S. 553, 562 (1983).  However, "[n]ot all pressure necessarily 'compel[s]' incriminating statements." *McKune v. Lile,* 536 U.S. 24, 49, (2002)(O'Connor, J. concurring).  Volunteered statements are not barred by the Fifth Amendment.  *Miranda v. Arizona,* 384 U.S. 436, 478 (1966).

The petitioner in the instant case was not compelled to be a witness against himself.  The Department of Corrections' sex offender treatment program was voluntary for the petitioner.[2]  The petitioner had a choice.  He could admit

---

[2] We note that 42 Pa.C.S.A. § 9718.1(a) provides that persons convicted of certain enumerated sex offenses shall attend and participate in a Department of Corrections program of counseling or therapy designed for incarcerated sex offenders. Section 9718.1(b) provides that an offender required to participate in Department of Corrections sex offender therapy under § 9718.1(a) shall not be eligible for parole unless the offender has participated in that therapy.  Section 9718.1, (continued...)

guilt, participate in and complete the sex offender treatment
program and have the completion of the program looked upon as
a favorable factor in the parole decision.  Or, he could
refuse to admit guilt and therefore not participate in or
complete the sex offender treatment program and have the lack
of completion of the program looked upon as an unfavorable
factor in the parole decision.

The choice facing the petitioner may have been a
difficult one.  However, it is not necessarily
unconstitutional for an individual to have to make difficult
choices.  Although an individual "may have a right, even of
constitutional dimensions, to follow whichever course he
chooses, the Constitution does not by that token always forbid
requiring him to choose." *McGautha v. California*, 402 U.S.
183, 213 (1971).

The Supreme Court has held that the Fifth Amendment is
not violated by requiring a death row inmate to choose between
possibly incriminating himself at this clemency interview or
having adverse inferences drawn from his silence at that
interview. *Ohio Adult Parole Auth. v. Woodard,* 523 U.S. 272,

---

[2](...continued)
however, only applies to persons who committed offenses on or
after December 20, 2000, the effective date of that section. *See
Note following 42 Pa.C.S.A. § 9718.1.*  The petitioner was
convicted in June of 2000. *See Doc. 1 at ¶2.*  Thus, it follows
that he committed his offense prior to December 20, 2000, and
§ 9718.1 does not apply to him.

288 (1998).  The clemency interview was voluntary and the
Court stated that "[i]t is difficult to see how a voluntary
interview could "compel" respondent to speak." *Id.* at 286.
The court stated that the inmate "merely faces a choice quite
similar to the sorts of choices that a criminal defendant must
make in the course of criminal proceedings, none of which has
ever been held to violate the Fifth Amendment." *Id.*  The Court
concluded that the pressure on the inmate to speak in the hope
of improving his chance at being granted clemency does not
make the interview compelled. *Id.* at 288.

The Court has also held that plea bargaining does not
violate the Fifth Amendment even though the defendant may feel
considerable pressure to admit guilt in order to obtain more
lenient treatment. *Brady v. United States,* 397 U.S. 742, 751
(1970). *See also Corbitt v. New Jersey*, 439 U.S. 212, 220
(1978)("While confronting a defendant with the risk of more
severe punishment clearly may have a 'discouraging effect on
the defendant's assertion of his trial rights, the imposition
of these difficult choices [is] an inevitable' – and
permissible 'attribute of any legitimate system which
tolerates and encourages the negotiation of pleas.'").

It is difficult to see how the choice confronting the
petitioner in the instant case can be seen to give rise to
more compulsion than that present in the clemency situation in
*Woodard* or in the typical plea bargain situation.
Accordingly, we conclude that the Board did not violate the

19

petitioner's Fifth Amendment right against self-incrimination by denying him parole on the basis that he has not completed the Department of Corrections' sex offender treatment program. This conclusion is consistent with conclusions reached by other courts in similar situations. *See Ainsworth v. Stanley*, 317 F.3d 1, 6 (1st Cir. 2002)(concluding "that the reduced likelihood of parole for refusing to participate in the SOP does not constitute a penalty sufficient to compel incriminating speech in violation of the Fifth Amendment"); *Gwinn v. Awmiller,* 354 F.3d 1211, 1226 (10th Cir. 2004)(holding that loss of opportunity to accrue good time credits at an increased rate based on refusal participate in sex offender treatment program is not a consequence so great as to constitute compulsion); *Thorpe v. Grillo,* 80 Fed.Appx. 215, 2003 W.L. 22477890 (3d Cir. 2003)(holding that Department of Corrections' policy of excluding those who do not admit guilt from the sex offender treatment program does not violate the Fifth Amendment).

        D. First Amendment.

        The petitioner claims that he has a First Amendment right to elect not to participate in a voluntary sex offender program which is merely recommended by counselors and not required by the court.  The petitioner does not specify in what manner his First Amendment rights were violated. Nevertheless, because the sex offender program is voluntary, the petitioner's First Amendment claim is without merit. *See*

*Searcy v. Simmons*, 299 F.3d 1220, 1228 (10th Cir. 2002)(holding that "[i]n light of our conclusion that the KDOC's system of revoking privileges and withdrawing good time credit opportunities in response to an inmate's refusal to participate in the SATP does not amount to compulsion, Mr. Searcy's First Amendment claim must fail.").

      E. Eighth Amendment.

     The petitioner claims that the Board violated the Eighth Amendment by extending his sentence in breach of his plea agreement.  As indicated in connection with his due process claims, the petitioner has not presented a copy of the plea agreement, the transcript of the sentencing colloquy does not support the petitioner's assertion that the plea agreement dealt directly with his release on parole at the completion of his minimum sentence, and the Board has the exclusive power to determine when, or if, a prisoner whose maximum sentence is two years or more is to be paroled.

     The petitioner has failed to establish an Eighth Amendment violation.

      F. State Law Claims.

     The petitioner argues that the Board erred in denying him parole based on the "fair administration of justice" because 61 P.S. § 331.1, which provides *inter alia* that the

Board shall "assist in the fair administration of justice by ensuring the custody, control and treatment of paroled offenders," was intended to apply to parole violators and capital offenses.  The petitioner also claims that the Board violated its own policy with regard to conducting his parole hearing.

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  Federal habeas corpus relief does not lie for errors of state law. *Id*. at 67.

The petitioner's claims that the Board violated 61 P.S. § 331.1 and its own policy are claims of violations of state law and are not cognizable federal habeas claims.

V.  Recommendations.

Based on the foregoing, it is recommended that the petitioner's motion (doc. 8) for stay be denied, that the petition (doc. 1) for a writ of habeas corpus be denied, and that the case file be closed.

                                        */s/ J. Andrew Smyser*
                                        J. Andrew Smyser
                                        Magistrate Judge

Dated: June 30, 2005.

22